# FOR PUBLICATION

FILED & ENTERED

FEB 09 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY hawkinso DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

| | |
|---|---|
| In re:<br><br>Janet Nabwanda Wagabaza,<br><br>Debtor(s), | Case No.: 6:07-bk-17151-MJ<br><br>Adversary No.: 6:17-ap-01117-MJ<br><br>Chapter: 7 |
| JANET NABWANDA WAGABAZA,<br><br>Plaintiff,<br><br>v.<br><br>R. ERIC BEVERIDGE AND SPECIAL DEFAULT SERVICES, INC.,<br><br>Defendants. | **MEMORANDUM OF DECISION RE PRELIMINARY INJUNCTION; SUMMARY JUDGMENT; MOTION FOR ABSTENTION; MOTION RE SUBJECT MATTER JURISDICTION; AND OSC RE CONTEMPT**<br><br>Hearing Dates: Various<br><br>Location:    Courtroom 301<br>3420 Twelfth Street<br>Riverside, CA 92501 |

**INTRODUCTION**

The mantra of bankruptcy relief in this country is that it provides a fresh start for the honest but unfortunate debtor who has fallen on

hard financial times.  The bankruptcy discharge rids a debtor of debt so

she has the opportunity to earn sufficient income to live comfortably and

again acquire property without the consequence of prior debts.  This case

tests that fresh start for a debtor who lost ownership of her personal

residence through a nonjudicial foreclosure at the same time she filed

bankruptcy and received a chapter 7 discharge of her debt.  Through the

good graces of her sister, who bought the house from the foreclosing

lender, she was able to continue residing in the house until seven years

later she could reacquire title by qualifying for her own mortgage.

But her fresh start was thwarted by a foreclosed-out junior trust

deed holder which claimed that under California Civil Code § 2930 (§

2930) it had a legal right to reimpose its trust deed on the residence

when the debtor reacquired it.  California law, however, does not

contemplate the consequence when the debt underlying the trust deed has

been discharged before it is reimposed, nor does it consider the effect

of the provision in the Bankruptcy Code that property acquired by a

debtor after the petition date may not be subjected to a lien based on a

prepetition security  agreement.  In a case of first impression, this

Memorandum of Decision addresses those issues.

This court has made a series of rulings in favor of debtor Janet

Wagabaza (Debtor) in her controversy with Eric Beveridge, Trustee of the

R. Eric Beveridge Separate Property Trust Dated February 12, 1999

(Beveridge).  These rulings answer the question described above:  whether

a junior lien holder on the residential property of Debtor, whose

security interest was extinguished by a nonjudicial foreclosure conducted

by a senior trust deed holder, may revive that security interest after

the underlying debt was discharged in a chapter 7 bankruptcy and then Debtor reacquires title to the home seven years later.  As fully explained below, this court has ruled that Beveridge may not revive the lien after the underlying debt was discharged.  Additionally, § 552(a)[1] prevents Beveridge from imposing a lien on real property acquired by Debtor after the bankruptcy petition date based on its extinguished prepetition deed of trust.

Based on these legal principles the court first issued a temporary restraining order and preliminary injunction to prevent Beveridge from pursuing an unlawful detainer proceeding after it purportedly foreclosed upon its junior lien.  The court then denied motions by Beveridge to abstain from the proceeding and to dismiss for lack of subject matter jurisdiction.  Finally, the court granted summary judgment for Debtor, quieting title to the subject property in Debtor, free of the Beveridge lien.

This Memorandum of Decision explains the court's reasoning in making these rulings and shall serve as the court's findings of fact and conclusions of law to the extent such are required under the provisions of Civil Rule 52(a), as made applicable in the bankruptcy court by Rule 7052.

**FACTUAL AND PROCEDURAL BACKGROUND**

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.  "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal rules of Civil Procedure.

The facts are largely undisputed.  On November 6, 2007, Debtor filed a chapter 7 bankruptcy proceeding in this court.  In her Schedule A she listed an ownership interest in real property located at 9300 Nickellaus Court, Corona, CA 92883 (the Property) which was her personal residence.  Her Schedule D listed two liens on the Property, a first trust deed held by Saxon Mortgage Services, as loan servicer for Wells Fargo Bank, trustee, (Wells Fargo trust deed) recorded on June 24, 2004, and a second trust deed recorded on October 31, 2006, held by Beveridge and serviced by Unified Mortgage Service (the Trust Deed).[2]  On December 27, 2007, Saxon/Wells Fargo filed a motion for relief from the automatic stay, alleging a default in payments by Debtor and a lack of equity in the property and seeking relief to complete a foreclosure on the Property.  Debtor did not oppose the motion, which was granted on January 22, 2008.  On February 13, 2008, Wells Fargo conducted a nonjudicial foreclosure sale on the Property and was the successful buyer based on a credit bid.  The Trustee's Deed Upon Sale was recorded on February 20, 2008, completing the foreclosure, which extinguished the second trust deed held by Beveridge.

On February 23, 2008, Debtor received a standard discharge and her case was closed on February 25, 2008.  As a result of the discharge, Debtor's personal liability to Beveridge was discharged.  After that date, Beveridge held no debt owed by Debtor and had no lien on any property owned by Debtor.

---

[2]  The beneficiary on the second trust deed was initially Emvest Mortgage Fund II, LLC which assigned the beneficial interest in the Trust Deed to Beveridge on January 4, 2007.

On May 23, 2008, Debtor's sister Zipporah Wagabaza purchased the Property from Wells Fargo, financing the purchase with a purchase money deed of trust from Countrywide recorded on the same date.  Zipporah was the sole owner of the Property and the sole borrower from Countrywide, but Debtor continued to live in the Property as her personal residence. On April 15, 2015, Zipporah conveyed the Property to Debtor, subject to the Countrywide deed of trust.  On August 20, 2015, Debtor obtained a new loan from ONY GLO, dba OGI Mortgage Bankers, which paid off the Countrywide loan.  Countrywide recorded a Full Reconveyance on September 9, 2015.

Asserting that the Trust Deed had revivified under § 2930 when Debtor reacquired title to the Property in 2015, Beveridge recorded a Notice of Default and Election to Sell (NOD)on July 28, 2016, initiating a nonjudicial foreclosure on the Property.[3]  In response, an attorney for Debtor wrote Beveridge contesting the existence of the Trust Deed because the Wells Fargo foreclosure extinguished it.   Beveridge wrote back, contending not only that the Trust Deed reattached when Debtor reacquired title from her sister, but also asserting that the Beveridge lien was in first position because of the refinance which took place subsequent to the reacquisition, demoting the ONY GLO lien to second position.[4]  The

---

[3] The record is devoid of facts about what happened between April 2015 and the Notice of Default, so whether Beveridge made a demand for payment on the Trust Deed or gave other notice to Debtor that it considered its trust deed reimposed on the property is unknown to the court.

[4] The ONY GLO deed of trust was assigned to PennyMac Loan Services LLC in February 2017.  PennyMac contested Beveridge's superior lien assertion in California state court and the issue was eventually resolved

second part of these assertions is not relevant to this court's ruling,

but the argument about the revivified Trust Deed and the NOD placed

Debtor's Property in jeopardy.  Subsequently, on November 1, 2016,

Beveridge recorded a Notice of Trustee's Sale against the Property.

On November 14, 2016, Debtor filed an action in the Superior Court

of California, County of Riverside, *Wagabaza v. Emvest Mortgage Fund II

LLC*, Case No. RIC 1615029 (State Court Action)[5], stating causes of action

for violation of statutory exercise of power of sale, injunctive relief,

cancellation of instruments, and declaratory relief. All the causes of

action dealt only with the pending foreclosure proceeding, not the

validity of the lien rights. Debtor promptly moved for a temporary

restraining order (TRO) and hearing on a preliminary injunction. As far

as this court can ascertain, no bankruptcy-related arguments were made by

Debtor in the State Court Action.  On November 23, 2016, the TRO was

granted, temporarily restraining the foreclosure sale, and a hearing on

the preliminary injunction was scheduled for December 16, 2016.  The

preliminary injunction hearing was continued numerous times by

stipulations[6] which also extended the effect of the TRO until it came on

for hearing on May 3, 2017, when it went off calendar, dissolving the

---

between those two parties with Beveridge in the junior position.  The
legal issues raised in that controversy are not pertinent to this court's
rulings.

   [5] The State Court Action was amended on December 13, 2016, to name
Beveridge as the proper defendant rather than Emvest.

   [6]  There are no written stipulations on the docket, so they must
have been oral.

TRO.[7]  In the meantime, Beveridge answered and filed a cross complaint with a sole cause of action for declaratory relief, asking the court to declare that the foreclosure procedure was valid.

As a result of the TRO dissolving, on May 11, 2017, Beveridge conducted a nonjudicial foreclosure sale of the Property and was the successful bidder.  A Trustee's Deed upon Sale was recorded on June 1, 2017, and on June 11, 2017, Beveridge served upon Debtor a 3-day notice to quit.  Debtor responded by filing a motion to reopen this bankruptcy case, which was granted, and filed the relevant adversary proceeding against Beveridge on June 15, 2017, seeking among other things an injunction against the state court unlawful detainer proceeding.  On June 26, 2017, after a noticed shortened time hearing, this court granted a TRO restraining the prosecution of the unlawful detainer case and set a hearing on the preliminary injunction on July 20, 2017.  After a hotly contested hearing on July 20,[8] this court granted the preliminary injunction (Preliminary Injunction), conditioned upon Debtor keeping the first trust deed on the Property current.

Beveridge did not appeal the Preliminary Injunction, which is a final appealable order under federal law.  Instead, after answering the complaint, it filed a Motion to Stay Action Under Mandatory Abstention, asserting that the issues before this court were not core and were being

---

[7] On April 24, 2017, the attorney for Debtor was allowed to withdraw, so she proceeded thereafter pro se.  Other than the withdrawal of counsel, the state court docket does not reflect why Debtor stopped pursuing the preliminary injunction.

[8] The substance of Beveridge's arguments is set forth in the Legal Analysis section below.

1  addressed in the State Court Action.  For reasons explained below, this

2  court denied the motion on October 19, 2017.  Still not to be deterred,

3  Beveridge then filed a Motion to Dismiss for Lack of Subject Matter

4  Jurisdiction, asserting that because under Ninth Circuit law there was no

5  private claim for relief for contempt for violation of the discharge

6  injunction, there was no subject matter jurisdiction for the quiet title

7  adversary proceeding.  Again this court denied the motion.

8       In the meantime, Debtor had filed a Motion for Summary Judgment and

9  a Motion for this court to issue an Order to Show Cause (OSC) for

10  Contempt based on violation of the discharge injunction.  The OSC was

11  issued and both motions were set for hearing on January 4, 2018.

12  Beveridge's Cross Motion for Summary Judgment was set on the same day.

13  Debtor's Summary Judgment Motion was premised on § 552(a), arguing that

14  the Bankruptcy Code preempted state law on the issue of whether the Trust

15  Deed could be reimposed or revivified on the Property when Debtor

16  reacquired it, i.e. that § 552(a)trumped § 2930, at least as applied

17  here.  Beveridge defended with its panoply of arguments raised in the

18  other motions, including that Debtor had agreed to the reimposition in

19  the trust deed itself, that bankruptcy law did not preempt state law on

20  this primarily state law issue, that the court should abstain because the

21  matter was not core, that the doctrine of prior exclusive jurisdiction

22  required Debtor to litigate only in state court, and that the adversary

23  was the wrong procedure.  The court gave an oral tentative ruling on the

24  record, granting summary judgment to Debtor, but submitted the matter for

25  final determination.  This memorandum now makes that ruling final:

26  Summary Judgment for Debtor is granted.  .

27

28                                    - 8 -

The OSC re contempt asserted two different theories: (1) that Beveridge's request for entry of default against Debtor on its cross complaint for declaratory relief in the State Court Action, which included a request for an award of attorney's fees, was a violation of the discharge injunction and (2) that all steps taken by Beveridge to reimpose the Trust Deed, foreclose on the property, and attempt to evict Debtor from the Property were contemptuous as a violation of the discharge injunction.  Beveridge defended by arguing that it could not have knowingly violated the discharge injunction because it believed it was rightfully enforcing its security interest which had passed through the bankruptcy unphased and in full force and effect.  After argument, the court took the contempt action under submission.  By this memorandum it now stays its decision on (1), the request for entry of default, until the outcome of the expected appeal of its other decisions and denies contempt on (2), the broader violations based on enforcing the Trust Deed because Beveridge could not have had the required subjective knowledge that the discharge injunction applied to its enforcement of their alleged security interest.

## I.   ANALYSIS of ADVERSARY PROCEEDING

### A.   The Relief Sought

The adversary proceeding[9] has five claims for relief, all turning on the factual background described above:  (1) Injunctive relief against Beveridge's enforcement of its claims against the property, including in particular prosecuting an unlawful detainer proceeding against the Debtor; (2) declaratory relief, for a declaration that Beveridge had no right to pursue a nonjudicial foreclosure against the Property because its Trust Deed had been extinguished by the Wells Fargo foreclosure sale and that the Notice of Default, the Notice of Trustee's Sale and the Trustee's Deed Upon Sale were void; (3) determination of the extent, priority and validity of the Beveridge Trust Deed such that the Trust Deed was void and all instruments recorded as part of a nonjudicial foreclosure under that Trust Deed were void; (4) for cancellation of recorded instruments, including the Notices of Default and Trustee's Sale and the Trustee's Deed Upon Sale; and (5) for wrongful foreclosure based on the Trust Deed being extinguished by the Wells Fargo foreclosure sale of the senior trust deed.

These claims for relief are similar in their factual and legal predicate and from this court's perspective, a ruling for Debtor on any one of them would compel a ruling for Debtor on the others.

**B.  Debtor's Legal Arguments**

Beginning with her assertions in support of the application for TRO and Preliminary Injunction, continuing in response to Beveridge's motions and then in support of the Summary Judgment motion, Debtor has tendered

---

[9] The original complaint had four claims for relief. An amended complaint was filed before Beveridge answered, asserting an additional claim for relief for wrongful foreclosure.

alternate theories in support of the relief she has sought.  First, she

argues that the Trust Deed was extinguished by the foreclosure of the

Wells Fargo trust deed and could not be reimposed years after the

underlying debt was discharged because there was no consideration for the

lien after discharge of the debt, an argument founded on the intersection

of California law, whereby the junior trust deed was extinguished, and

bankruptcy law, under which the discharge eliminated the consideration

for a security interest.  In the alternative, she espouses that § 552(a)

commands that property acquired by Debtor post petition, including her

reacquisition of the Property, shall not be subject to a Beveridge lien

based on its prepetition security agreement, i.e. the extinguished Trust

Deed, a pure bankruptcy-based argument.  Debtor contends that the

Bankruptcy Code preempts state law on that issue.  Debtor has

additionally responded to Beveridge's subject matter jurisdiction,

abstention, and procedural arguments, as will be articulated during the

discussion of those issues below.

###    C.  Beveridge's Legal Arguments

Beveridge initially relied on § 2930 and pre-1970 California cases

which were factually similar to this circumstance – i.e. a home owner had

been foreclosed upon by a senior lender, such foreclosure extinguished a

second trust deed, the home owner reacquired title shortly thereafter,

and these cases allowed the second trust deed creditor to revivify its

lien on the reacquired property under § 2930.  In making this argument,

Beveridge also recited language in the Trust Deed by which Debtor granted

the security interest in perpetuity.  It submitted that bankruptcy law

did not preempt state law, consistent with its argument that the issue

before the court was one primarily of state law, not core bankruptcy law, and that this court should abstain due to a lack of jurisdiction.  It further argued that § 552(a) did not apply to consensual liens on after-acquired property but then, as noted below, reversed field and characterized the new lien as involuntary, not consensual.  In addition, it asserted that its lien passed through the bankruptcy as an in rem right and that the discharge injunction therefore had no effect on its lien rights.  It alternatively argued that the doctrine of prior exclusive jurisdiction applied to deprive the bankruptcy court of jurisdiction to rule on an in rem issue raised first in state court, making federal abstention mandatory.  And, finally, it contended that the adversary proceeding was an improper remedy because the Ninth Circuit has ruled that there is no private right of action for violation of the discharge injunction, Debtor's remedy being solely a contempt action. The court will address each of these defenses below.

   **D.  Summary Judgment**

   A party may move for summary judgment where there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Civil Rule 56(a) made applicable by Rule 7056. Neither party here contends that any material facts are disputed; therefore, this issue may appropriately be decided on summary judgment.[10] However, if the court was not prepared to rule in favor of Debtor as a matter of law, it would not grant Beveridge's counter motion.  California

---

   [10] The court will enter concurrently a Statement of Uncontroverted Facts and Conclusions of Law in support of the Summary Judgment.

1  cases make it clear that the application of § 2930 is based on a common

2  law equitable doctrine.  *Hawkins v. Harlen*, 68 Cal. 236, 238, 9 P. 108

3  (1885) ("True, an after-acquired title by the mortgagor ordinarily inures

4  to the benefit of the mortgagee, but this is by operation of the doctrine

5  of relation, which is a fiction of the law adopted solely for the

6  purposes of justice, and will not be given effect when, as in the present

7  case, it would work manifest injustice.").  Such application here would

8  raise disputed factual issues which could only be resolved after a trial.

9

10  **E.  Jurisdiction**

11  Beveridge vigorously challenged this court's jurisdiction to

12  resolve this dispute on several grounds.  Debtor and the court deflected

13  these challenges.  The primary issue in this case concerns the effect of

14  the discharge injunction on the right of Beveridge to reimpose a lien

15  based on in rem rights after the in personam obligation to pay has been

16  terminated. As such, this matter is core as defined in 28 U.S.C. §

17  157(b)(2), subdivisions (I), "determinations as to the dischargeability

18  of particular debts"; (K) "determinations of the validity, extent, or

19  priority of liens"; and (O) "other proceedings affecting ... the

20  adjustment of the debtor-creditor ... relationship". The court further

21  relies on § 157(b)(3) which provides, "[A] determination that a

22  proceeding is not a core proceeding shall not be made solely on the basis

23  that its resolution may be affected by State law."  These statutes accord

24  subject matter jurisdiction to the bankruptcy court.

25  Once the court has found the matter is core, as demonstrated below

26  the wind goes out of the prior exclusive jurisdiction and mandatory

27

28

abstention arguments asserted by Beveridge.  Finally, Beveridge's

argument that the court lacks subject matter jurisdiction over the

adversary because the sole remedy for a discharge violation is a

contested matter for contempt is not a jurisdictional challenge; it is a

procedural challenge to the remedy available for the violation of

substantive bankruptcy law.  Determination of that proper remedy is also

core and falls within the exclusive jurisdiction of this court.

###    F.  Effect of the Discharge Injunction

Discharge of debt is the linchpin of the relief available to a

debtor in a bankruptcy proceeding.  It is the key to the fresh start

promised to the honest but unfortunate debtor and, without it, bankruptcy

would offer little solace. As noted in Collier on Bankruptcy ¶ 1.02 (16th

ed. 2017), "The discharge is of singular importance to the individual in

a chapter 7, 11, 12, or 13 ...." Discharge is not defined in the

Bankruptcy Code but has been variously defined in legal dictionaries as

"an order given by the bankruptcy judge….which forgives those remaining

debts which cannot be paid ..." (People's Law Dictionary) and "[t]he

release of a debtor from personal liability for prebankruptcy debts."

(Black's Law Dictionary, 10th ed. 2014).  Although Debtor focused her

primary arguments in her Summary Judgment Motion on § 552(a), the court

starts with a more basic view of the impact of the § 524(a) discharge on

the issues before the court.

1    In the simplest terms, the chapter 7 discharge of the underlying

2 debt owed by Debtor to Beveridge[11] meant that at the time she reacquired

3 title to the Property in 2015, she owed no money and had no obligation to

4 Beveridge as consideration for a lien.  It is long-settled California law

5 that a debt or obligation is a precursor to a lien. See, for example,

6 *Gostin v. State Farm Ins. Co.*, 224 Cal. App. 2d 319, 325, 36 Cal. Rptr.

7 596 (1964) (an attorney has no lien on litigation recovery where the

8 record did not demonstrate the obligation underlying the lien) and *East*

9 *Bay Municipal Utility District v. Garrison*, 191 Cal. 680, 692, 218 P. 43

10 (1923) (property tax does not become a lien on real property until the

11 tax is due to be paid).  Without debt, there can be no lien.  End of

12 story: Debtor wins.

13    Beveridge first argues that its lien passed through bankruptcy

14 unaffected by the administration of the case or the discharge.  Such

15 argument would bear weight, as liens not avoided or modified in a

16 bankruptcy case do pass through unaffected – See, *Johnson v. Home State*

17 Bank, 501 U.S. 78, 82-83 (1991) – if the lien had not been extinguished

18 under California law.  But it was:  during the pendency of the chapter 7,

19 before Debtor's discharge, Wells Fargo completed its nonjudicial

20 foreclosure sale, an act which extinguished Beveridge's junior lien.

21 *See*, Miller & Starr, 5 Cal. Real Est. § 11:100 (3d ed.) ("A foreclosure

22 sale of a senior deed of trust eliminates the liens of junior lienors,

---

[11] The note executed by Debtor at the time Beveridge's predecessor Emvest loaned her $25,000 in 2007 is not part of the record before the court, but it is undisputed that Debtor owed that sum to Emvest at the time the Trust Deed was recorded on January 4, 2007.

but the junior liens attach to any surplus sales proceeds that must be paid to the junior lienors."); *Sumitomo Bank v. Davis*, 4 Cal. App. 1306, 1314, 89 P. 441 (1992).  So, under the California law that Beveridge relies on for all its arguments, it had no lien when the in personam obligation was discharged.  Again, looking at the hornbook California law cited above, without an obligation there can be no lien.  In such setting, § 2930 has no bearing; a lien cannot attach where there is no debt.

Beveridge looks to pre-1970 California cases for the principle that the lien does revivify when a former owner of property reacquires title after the original lien was foreclosed out, *Jensen v. Duke*, 71 Cal. App. 210, 234 P. 876 (1925) and *Barberi v. Rothchild*, 7 Cal. 2d 537, 539-541, 61 P.2d 760 (1936).  Although both cases hold that § 2930,[12] which codified the common law rule of after-acquired title, was applicable in such circumstance where the obligor on the junior lien reacquired title,[13] neither case considers the impact of a modern day bankruptcy discharge on such principle. An intervening bankruptcy was not in play in *Jensen*, but *Barberi* notes in passing that between the time of the senior foreclosure and the title reacquisition, the debtor filed a petition in

---

[12] Section 2930 provides "Title acquired by the mortgagor subsequent to the execution of the mortgage, inures to the mortgagee as security for the debt in like manner as if acquired before the execution."  The revival of junior deeds of trust is a corollary of the after-acquired title doctrine in which a deed of trust given by8 a trustor will attach to the property subject to the deed of trust when the trustor acquires the property.  *See, Tolman v. Smith*, 85 Cal. 280, 285-286, 24 P. 743 (1890).

[13] *Jensen v. Duke* upheld the principle for the mortgagor and *Barberi v. Rothchild* extended the holding to a trust deed holder.

bankruptcy and obtained his discharge.  However, that case provides no

analysis of the impact of this fact on the lien reimposition which it

authorizes.  Because of the change in the nature of the discharge

injunction between 1936 and the present time, to the extent that *Barberi*

implies the bankruptcy discharge makes no difference, it has been

overruled by statutory amendment.

Between 1800 and 1970, the federal bankruptcy discharge was merely

an affirmative defense that was waived if not timely asserted in

subsequent litigation. *Lone Star Security & Video, Inc. v. Gurrola (In re*

*Gurrola)*, 328 B.R. 158, 165 (9th Cir. BAP 2005).  Creditors could

disregard the discharge and sue, hoping the defense was not timely

raised. *Id.*  The purpose of the 1970 enactment of Bankruptcy Act § 14f

was to change the discharge from an affirmative defense to an absolute

defense. *Id.*  Prior to its enactment, the discharge accorded under the

Bankruptcy Acts of 1800, 1841, 1867, and 1898 did not void debts or

judgments, but was entertained as a defense if raised by the debtor.

*See, Dimcock v. Revere Copper Co.*, 117 U.S. 559, 566 (1886).  Thus, when

the Federal Rules of Civil Procedure were adopted in 1937, "discharge in

bankruptcy" was enumerated as an affirmative defense at Rule 8(c).[14]

Section 14f provided:

An order of discharge shall ---

(1)    Declare than any judgment theretofore or
thereafter obtained in any other court is
null and void as a determination of the

---

[14]    For an exhaustive discussion of the evolution of the discharge
and its present effect of voiding judgments and debt whether or not
raised affirmatively by a debtor, see In re *Gurrola*, 328 B.R. at 165-169.

> personal liability of the bankrupt with
> respect to any of the following: (a) debts
> not excepted from the discharge under
> subdivision a of section 17 of this Act; (b)
> debts discharged under paragraph (2) of
> subdivision c of section 17 of this Act; and
> (c) debts determined to be discharged under
> paragraph (3) of subdivision c of section 17
> of this Act; and
>
> (2)   enjoin all creditors whose debts are
>        discharged from thereafter instituting or
>        continuing any action or employing any
>        process to collect such debts as personal
>        liabilities of the bankrupt.

The legislative history to the new statute made it abundantly clear discharge was thereafter "self-executing" and there was no requirement that the fact of bankruptcy protection be raised in state court.  H.R. REP. No. 91-1502 (1970), 1970 U.S.C.C.A.N. at 4156, quoted by 116 CONG. REC. 34,818 (statement of Rep. Rogers); *In re Gurrola*, 328 B.R. at 167. When the 1978 Bankruptcy Code was adopted, it incorporated the self-executing provisions of § 14f in new § 524(a), expanding its breadth and reemphasizing the voidness of prior judgments and obligations.  The defense of discharge in bankruptcy is now an absolute, nonwaivable defense.  *In re Gurrola*, 328 B.R. at 170.  One can only speculate about the reason the California Supreme Court in *Barberi* had nothing to say about the bankruptcy discharge, but it seems logical to assume it was not raised as a defense by the debtor and was therefore waived.  Suffice it to say that case can be no precedent for the effect of such discharge today.

Beveridge also cites *Cortez v. American Wheel, Inc. (In re Cortez)*, 191 B.R. 174 (9th Cir. BAP 1995) to support its position that the Trust Deed lien passed through the bankruptcy.  In *Cortez,* the debtors executed

1  a promissory note to American Wheel, secured by a deed of trust.  For

2  unexplained reasons, the trust deed was not recorded.  Debtors later

3  filed a chapter 7 case, listing American Wheel as an unsecured creditor.

4  Although the trust deed was avoidable by the trustee because it had not

5  been perfected, neither trustee nor debtors sought to avoid it while the

6  case was administered.  After discharge and closing, American Wheel

7  recorded the trust deed and then filed an action to judicially foreclose

8  the lien.  Debtors then sought to reopen the bankruptcy case so that they

9  could prevent American Wheel from foreclosing.  The bankruptcy court

10 denied the reopen motion without stating its reasons and debtors

11 appealed.  The BAP affirmed, finding that the valid but unperfected lien

12 which was not avoided during the bankruptcy had passed through the

13 bankruptcy unimpaired and was enforceable. The BAP did not need to

14 consider whether there was underlying debt to support the lien because it

15 had never been extinguished.  Although a hypothetical lien creditor (i.e.

16 the trustee) could have avoided the trust deed based on the failure to

17 perfect it by recording, this had no effect on the security as between

18 the debtors and American Wheel.  So American Wheel was entitled to

19 foreclose its lien.

20     That case is distinguishable from the facts here.  Here, the Trust

21 Deed was extinguished by Wells Fargo's foreclosure during the bankruptcy

22 and therefore as a matter of state law could not pass through.  Although

23 "silent" to the world because of its unrecorded status, as between the

24 debtors and American Wheel it was a valid lien, making the discharge of

25 the personal liability not pertinent to the ability to foreclose after

26 the case closed.  Here, there was no longer a valid lien when the case

27

28                                    - 19 -

closed.  And there was no longer any personal liability to support a new lien after the discharge.

Beveridge's lien was extinguished by Wells Fargo's foreclosure.  No lien passed through.  The obligation to Beveridge was discharged in the chapter 7.  Without a debt there can be no lien.  Title should be quieted in Debtor absent any Beveridge Trust Deed.  Any steps taken to enforce the Trust Deed, including the nonjudicial foreclosure and eventual unlawful detainer proceeding, are void.  Section 524 specifies that the discharge voids any preexisting judgment and case law holds that an act in violation of the discharge injunction is void.  *In re Gurrola*, 328 B.R. at 171.  Since the existence of an obligation is necessary to creation of a lien, by asserting that the Trust Deed encumbered the Property when reacquired, Beveridge has asserted that the obligation to pay must still exist. Such assertion is void under § 524 and everything that flows therefrom is also void.

### G.  Section 552(a) Preempts State Law

Section 552(a) is a critical component of a debtor's fresh start and provides that "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case."  Thus, the plain language of the statute here states that when Debtor regained title to the Property in 2015 it was not subject to a new lien based on the Trust Deed executed in 2006.  To the contrary, however, § 2930 compels an opposite result (overlooking for the moment that the underlying obligation was discharged).  Under its provisions and the older California cases cited above, when Debtor reacquired the

1   Property from her sister, it was after-acquired property that was subject

2   anew to Beveridge's security interest which was extinguished in 2008 by

3   the Wells Fargo foreclosure.  These two statutes cannot coexist, as the

4   outcomes under the current facts are in direct conflict with each other.

5   Therefore, this court holds that the Bankruptcy Code preempts state law,

6   meaning the Trust Deed may not reattach.

7        Under the Supremacy Clause, U.S. Const. Art. VI, cl.2, state law is

8   preempted by federal law in three circumstances:  (i) express preemption,

9   (ii) field preemption, and (iii) conflict preemption.  *English v. General*

10  *Elec. Co.*, 496 U.S. 72, 78-79 (1990).  Article 1, Section 8 of the

11  Constitution empowers Congress to establish uniform laws on the subject

12  of bankruptcy throughout the United States.  State laws, "to the extent

13  that they conflict with the law of Congress, enacted under its

14  constitutional authority, on the subject of bankruptcies are suspended."

15  *Stellwagen v. Clum*, 245 U.S. 605, 613 (1928).  Whether Congress has

16  preempted state law is a matter of congressional intent, express or

17  implied.  Implied preemption is inferred from surrounding circumstances

18  of the statute that Congress intended to occupy the field.  This is field

19  preemption.  *Sherwood Partners, Inc. v. Lycos, Inc.*, 394 F. 3d 1198, 1201

20  (9th Cir. 2005).  Where Congress has not entirely displaced the state

21  regulation of a specific area, state law is nevertheless preempted to the

22  extent that it actually conflicts with federal law, including when state

23  law "stands as an obstacle to the accomplishment and execution of the

24  full purposes and objectives of Congress." This is conflict preemption.

25  *Pacific Gas and Elec Co. v. State Energy Resources Conservation &*

26

27

28                                  - 21 -

1  *Development Com'n*, 461 U.S. 190, 204(1983), citing *Hines v. Davidowitz*,

2  312 U.S. 52, 67 (1941).

3      In order to determine whether the Bankruptcy Code preempts the

4  operation of § 2930 in this case, the court must look at the purpose of

5  the state statute and the purpose of the Bankruptcy Code, in particular §

6  552(a).  *Burkhart v. Coleman (In re Tippet)*, 542 F. 3d 684, 689 (9th Cir.

7  2008).  Chapter 7 embodies two ideals:  (1) giving the individual debtor

8  a fresh start, by giving her a discharge of most of her debts; and (2)

9  equitably distributing a debtor's assets among competing creditors.

10  *Sherwood Partners, Inc.*, 394 F. 3d at 1203.  On February 21, 2008, Debtor

11  received her § 524 discharge which operates as an injunction against

12  commencement or continuation of an action, the employment of process, or

13  an act to collect, recover or offset any such debt as a personal

14  liability of the debtor.  As such, the injunction "casts a wide shadow,

15  with a large penumbra."  *Ruvacalba v. Munoz (In re Munoz)*, 287 B.R. 546,

16  553 (9th Cir. BAP 2002).  Additionally, the discharge injunction applies

17  "permanently with respect to every debt that is discharged."  G*arske v.*

18  *Arcadia Fin., Ltd. (In re Garske)*, 287 B.R. 537, 542 (9th Cir. BAP 2002).

19      When Debtor reacquired the Property on April 15, 2015, § 552(a) was

20  also effective, preventing a lien based on the Trust Deed from attaching

21  to the Property.  In line with the general purpose of the Bankruptcy

22  Code, § 552(a) serves to facilitate a debtor's fresh start.  *In re*

23  *Transportation Design and Technology, Inc.*, 48 B.R. 635 (Bankr. S.D.Cal

24  1985) ("The purpose of this provision is to facilitate a debtor's 'fresh

25  start' by enabling him or her to use after-acquired property free and

26  clear of prebankruptcy liens.").  If Beveridge's junior lien is allowed

27

28                                    - 22 -

to reattach, it would be contrary to the purposes of § 552 and would

frustrate the effect of the § 524 discharge.  Therefore, § 2930 is in

direct conflict with the purpose of the Code and conflict preemption

applies.

Beveridge argues to the contrary, relying on cases which are easily

distinguishable.  In *Sticken v. Applebaum (In re Applebaum)*, 422 B.R.

684, 693 (9th Cir. BAP 2009) the court found that California's exemption

statutes did not interfere with the § 522 exemption scheme and therefore

they were not preempted.  In so ruling the BAP compared the purpose of §

522 with the purpose of the exemption statutes and found no conflict.

Both were intended to protect certain property of the debtor from

creditor execution or trustee liquidation to facilitate an "appropriate

standard of living post bankruptcy" and thereby, a fresh start.  *Id.* at

692, citing *In re Brown*, 2007 WL 2120380 at *4-6 (Bankr. N.D.NY 2007).

The two statutes may coexist in harmony, so preemption is not implicated.

The conflict between the statutes here is blatant.[15]

Moreover, a finding that § 552(a) preempts and therefore makes

ineffective § 2930 is entirely consistent with this court's application

of the discharge injunction to preclude Beveridge from reimposing the

Trust Deed after the underlying debt has been forgiven.  Both support the

right of Debtor to a fresh start, with new property unencumbered by a

lien based on a prepetition security agreement so that she may maintain

an appropriate standard of living.  Implementation of § 2930 would defeat

that purpose.

---

[15] Since the court finds conflict preemption, there is no purpose in
exploring the applicability of field preemption.

1        Challenging the effect of § 552(a) on theories other than federal

2   preemption, Beveridge poses that it is inapplicable here because (a) it

3   was intended only to protect personal property, not real property, and

4   (b) its protections extend only to the estate during the case, not to the

5   debtor after closing.  In support of these arguments it relies on a

6   bankruptcy court decision in a chapter 12 proceeding, *In re Forrest,* 2011

7   WL 10656620 (Bankr. E.D. CA. 2011), and a Ninth Circuit decision, *Philip*

8   *Morris v. Bering Trader, Inc. (In re Bering Trader, Inc.)*, 944 F. 2d 500

9   (1991).  Neither case provides applicable precedent for Beveridge's

10   arguments, and no other authorities would limit § 552 as Beveridge would

11   have it limited.

12        The court in *Forrest* was tasked to determine whether a crop

13   creditor was accorded security in the present and future crop of raisin

14   grapes or whether the parties' agreement gave it ownership rights.  In

15   finding that it held security, making the limits of § 552 apply, the

16   court reviewed the legislative history where it discussed Article 9 of

17   the Uniform Commercial Code, a logical review since the dispute there was

18   over personal property rights, which does set forth a policy that §

19   552(a)'s purpose was to maximize free and clear estate property in order

20   to pay creditors the fullest amount possible. However, the court never

21   said nor implied that a similar policy would not apply to real property,

22   nor did it provide any analysis which suggests that the word "debtor"

23   should be ignored.  The outcome of *Forrest* favored the debtor there and

24   it certainly does no damage to Debtor's argument here.

25        *Bering Trader* is similarly inapposite.  There, the Ninth Circuit

26   discusses the exceptions in § 552(b) to determine whether rents received

27

28                                - 24 -

on real property collateral during a chapter 11 belonged to the secured

creditor under a subsection(b) exception or remained to benefit the

estate.  Although the case was not about property of a debtor as opposed

to an estate, the analysis did not suggest it would be different if it

was property of the debtor and no estate administration issues were in

play.

The weakness of Beveridge's authority underscores that although

policy sound bites might favor an interpretation of § 552(a) that would

limit it to protecting an estate while a case is open, the precise words

of the unambiguous statute bear substantial weight.  *United States v. Ron

Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989). It speaks directly

about property of the debtor, not just the estate, and has no temporal

limitation to "while the case is open".  Therefore, § 552(a) applies and

by itself, without reference to the discharge and lien extinguishment,

prevents the reimposition of the Trust Deed on the Property.[16]

### H. The Doctrine of Prior Exclusive Jurisdiction

As discussed above, Debtor initially commenced litigation in state

court, seeking to restrain the nonjudicial foreclosure proceeding.  In

---

[16] In opposing the Summary Judgment motion, Beveridge argues that
the effect of § 2930 is to impose an entirely new involuntary lien on the
Property and therefore it is not "resulting from" the prepetition
security agreement and not subject to the § 552(a) bar.  The court found
the argument largely unintelligible and supported by no case authority,
but it also dooms Beveridge to defeat.  If an entirely new involuntary
lien springs into life in 2015 under § 2930, because of the intervening
discharge, there is no debt to support it.  When this critical element is
missing, there can be no lien.  This is similar to a prepetition abstract
of judgment which did not create a judicial lien because the judgment
debtor owned no real property.  After the obligation manifested by the
judgment is discharged, the abstract has no effect on after-acquired
property because the underlying debt no longer exists.

opposing Debtor's Summary Judgment and in support of its own earlier

motions, Beveridge has asserted that the doctrine of prior exclusive

jurisdiction would deprive this court of the power to resolve this

dispute, compelling dismissal in favor of the still pending State Court

Action.  If the doctrine did apply here, this court would lack

jurisdiction and must mandatorily abstain.  *State Eng'r of State of

Nevada v. S. Fork Band of Te-Moak Tribe of W. Shoshone Indians of Nevada*,

339 F. 3d 804, 810 (9th Cir. 2003) ("Although the doctrine is based at

least in part on considerations of comity and prudential policies of

avoiding piecemeal litigation, it is no mere discretionary abstention

rule.  Rather it is a mandatory jurisdictional limitation.").

Prior exclusive jurisdiction was developed in common law and has

been articulated as controlling federal law by the Supreme Court.  It is

a restraint on normal jurisdictional exercise by federal courts.

Ordinarily, "the pendency of an action in the state court is no bar to

proceedings concerning the same matter in the Federal court having

jurisdiction." *Exxon Mobil Corp v. Saudi Basic Indus. Corp.*, 544 U.S.

280, 292 (2005) (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)).

However, "when one court is exercising *in rem* jurisdiction over a *res,* a

second court will not assume *in rem* jurisdiction over the same res."

*Marshall v. Marshall*, 547 U.S. 293, 311 (2006).  The doctrine applies in

both *in rem* and *quasi in rem* matters and is both a principle of comity

and of subject matter jurisdiction.

Beveridge asserts that Debtor's state court litigation is *in rem* or

*quasi in rem*, compelling this court to defer to it.  To make such

determination, this court must look to the state court pleadings, as well

- 26 -

as the status of the case during the federal proceeding.  Debtor's

complaint stated four causes of action on very narrow terms:  (1)

Violation of the Statutory Power of Sale; (2) Injunctive relief [sic, a

remedy, not a cause of action]; (3) Cancellation of Instruments,

specifically the Notice of Default and Notice of Trustee's Sale; and (4)

Declaratory Relief that the contemplated nonjudicial foreclosure was

invalid.  Beveridge's cross complaint had one cause of action, for

Declaratory Relief that the Trust Deed was valid.  Although she had

initially obtained a TRO against the foreclosure proceeding, before she

reopened her bankruptcy case Debtor had dropped pursuit of a preliminary

injunction and the foreclosure sale had already occurred.  This

circumstance made all of the state court causes of action moot:  a court

ruling on any of the causes of action would not undo the foreclosure

because there was no claim praying for that remedy.  *Wilson & Wilson v.*

*City Council of Redwood City*, 191 Cal. App. 4th 1559, 1574, 120 Cal.

Rptr. 3d 665 (2011) (the pivotal question in determining if a case is

moot is therefore whether the court can grant the plaintiff any effectual

relief); *California Water & Telephone Co. v. County of Los Angeles*, 253

Cal. App. 2d 16, 22-23, 61 Cal. Rptr. 618 (1967) (if events have made

such relief impracticable, the controversy has become "overripe" and is

therefore moot).  Moreover, since all the claims were about instruments

rather than the underlying real property, whether the action was *in rem*

is questionable.  It does not seem proper for this court to abstain from

a moot case.

    A second, more powerful reason to not abstain exists:  the scope of

federal jurisdiction accorded to the district and bankruptcy courts by 28

U.S.C. § 1334.  District courts are granted exclusive jurisdiction over

bankruptcy cases.  28 U.S.C. § 1334(a).  District courts are also granted

"original but not exclusive jurisdiction of all civil proceedings arising

under title 11, or arising in or related to cases under title 11."  28

U.S.C. § 1334(b).  "Original jurisdiction" is a term of art referring to

"[a] court's power to hear and decide a matter before any other court can

review the matter."  Bryan Garner, ed. Black's Law Dictionary, 3d Pocket

Ed. (2006) at 395. This original jurisdiction is vested "notwithstanding

any Act of Congress that confers exclusive jurisdiction on a court other

than the district court." *Id.*  The intent of this language is to bring

all bankruptcy-related litigation within the purview of the district

court and therefore the bankruptcy court by reference.  28 U.S.C. § 151.

    As discussed above, the critical issues to be determined rest on

the bankruptcy principle of discharge, as well as the scope of § 552(a),

and their combined impact on Beveridge's asserted lien on the Property,

at a minimum related-to jurisdiction.  Therefore, this court has the

right to take the first crack – original – at deciding them. Moreover,

the State Court Action made no mention of these bankruptcy issues.  It is

not as if this court was snatching away the right to rule from the state

court. Unless amended pleadings were allowed, it would never resolve the

effect of the discharge or § 552. For these powerful reasons, prior

exclusive jurisdiction does not deprive this court of the power to decide

the issues before it.

    **I.  Contempt Is Not the Exclusive Remedy**

    Perhaps the most troubling argument asserted by Beveridge regarding

the adversary proceeding before the court is that Debtor's sole remedy

1  for a violation of the discharge injunction is a contempt proceeding.  It

2  posits that this court lacks subject matter jurisdiction because under

3  the prevailing authority of *Walls v. Wells Fargo Bank*, 276 F 3d 502 (9th

4  Cir. 2002) a debtor does not have a private right of action for damages

5  for violation of the discharge injunction.  A civil contempt proceeding,

6  brought by motion under Rule 9014, was intended by Congress as the remedy

7  for a violation of the discharge injunction and since only the

8  legislature may speak to the manner of enforcement of a federal statute

9  (here § 524(a)), no claim for relief for such violation exists.  *Id*. at

10  506-507.  After all, says Beveridge and *Wall,* "compensatory civil

11  contempt allows an aggrieved debtor to obtain compensatory damages,

12  attorney's fees, and the offending creditor's compliance with the

13  discharge injunction.  Therefore, contempt is the appropriate remedy and

14  no further remedy is necessary."  *Id*. at 507.

15      In addition to *Wall*, Beveridge cites to *Barrientos v. Wells Fargo

16  Bank Nat. Ass'n*, 2009 WL 1438151 at *3 (S.D. Cal. 2009) *aff'd sub nom.

17  Barrientos v. Wells Fargo Bank, N.A.*, 633 F. 3d 1186 (9th Cir. 2011), and

18  *In re Frambes*, 454 B.R. 437 (Bankr. E.D. Ky. 2011) for their holdings

19  that § 105 does not create an adversary claim for relief for violation of

20  the discharge injunction; contempt is the sole remedy.

21      Although the words of *Wall* are precise and compelling, this court

22  finds that the limitation on the remedy[17] is confined to stating a claim

23

---

24      [17] As noted above, this court does not recognize this argument as a
subject matter jurisdiction argument.  The subject matter jurisdiction is
25  founded on 28 U.S.C. § 1334(b) as the basis for core jurisdiction.  The
Ninth Circuit speaks of the debtor choosing the wrong "remedy" and that
26  is precisely what is at issue.

27

28                                    - 29 -

for relief precisely for discharge violation and a careful reading of the cases shows they were not intended to prevent claims for quiet title or declaratory relief as have been asserted in the complaint at hand. First, in the cited cases which created the rule of law, the debtors sought to state a claim for relief for discharge violation. And in *Wall* and *Barrientos* the chosen court was not the bankruptcy court but rather the district court. Both courts wished to defer to the court issuing the injunction and with expertise on the subject matter, the bankruptcy court through a contempt proceeding, to provide the remedy through contempt. "Implying a private remedy here could put enforcement of the discharge injunction in the hands of a court that did not issue it ... which is inconsistent with the present scheme that leaves enforcement to the bankruptcy judge whose discharge order gave rise to the injunction. *Wall*, 276 F. 3d. at 509.

Debtor here has not filed a complaint in district court and has not pled a claim for relief of violation of the discharge; the claims here are for injunctive relief, declaratory relief, determination of the extent and priority of a lien, cancellation of instruments, and wrongful foreclosure, all claims recognized as private rights of action under federal and state law. To that end, the holdings of *Wall* do not prohibit such claims. Moreover, as discussed at further length below, contempt is an ineffective remedy to "right the wrong" which occurred when Beveridge reimposed the Trust Deed and foreclosed. This court cannot find Beveridge in contempt for that wrong because it did not possess the necessary subjective knowledge that the discharge injunction applied to its acts.

Acts which violate the discharge injunction are void ab initio.  *In re Gurrola*, 328 B.R. at 175.  Reimposing the Trust Deed is a void act. The subsequent foreclosure is void. The contemplated Unlawful Detainer would be void if carried out.  Yet, if this court follows blindly the articulated dictate of *Wall* and instructs that the only remedy for Debtor is contempt, Debtor effectively has no remedy.  Could the Ninth Circuit have intended this result, preventing Debtor from using commonly accepted and pled claims for relief to give Debtor clean title, unencumbered by a void Trustee's Deed upon Sale?  Beveridge would have it be.  This court cannot accept that as the intended outcome and rules that these remedies are available to Debtor.[18]

### J. Disposition of Claims for Relief

The court described the claims for relief set forth in the First Amended Complaint in Part A above and opined that a ruling for Debtor on one would compel a similar ruling on the others.  However, the relief sought in these claims is largely duplicative; in particular, the third claim for determination of extent and validity of lien, the fourth claim for cancellation of recorded documents, and the fifth claim for wrongful foreclosure are duplicative of the declaratory relief available under claim two.  For that reason, in granting Summary Judgment for Debtor, the court will enter Judgment for Debtor on the first and second claims for

---

[18] Even the Ninth Circuit has ignored its own limited remedy mandate.  The contempt issue addressed in *Zilog,* discussed below, came after summary judgment in an adversary proceeding. In reversing the district court and bankruptcy court, Judge Kozinski did not say a word about the adversary proceeding being the improper remedy.

relief and will dismiss the third, fourth and fifth claims as duplicative and unnecessary without prejudice.

## II.  ANALYSIS OF THE CONTEMPT PROCEEDING

### A.  Relief Sought

As described in the Factual and Procedural Background, there are two aspects to the contempt proceedings.  Debtor first asserted only that the Request for Entry of Default in the State Court Action by Beveridge, which included a reference to an attorney's fee award, was a violation of the discharge injunction because Debtor's personal liability for attorney's fees based on a clause in the prepetition Trust Deed was discharged.  At this court's prodding, Debtor then supplemented its request to argue that all actions taken by Beveridge pertaining to the Trust Deed after Debtor reacquired title to the Property were a discharge violation because the Trust Deed was extinguished and by the time an attempt to revive it occurred, the underlying debt had been discharged. The court will address them separately.

### B.  Reimposition of Trust Deed and Subsequent Acts

The court has found that the reimposition of the Trust Deed and subsequent acts were a violation of the discharge injunction and therefore void.  The question here is a simple one:  is Beveridge in contempt because it took those acts?

The Ninth Circuit has set a high bar to find contempt for violating the discharge injunction.  In a series of cases, Renwick v. *Bennett (In re Bennett)*, 298 F. 3d 1059, 1069 (9th Cir. 2002), *Walls v. Wells Fargo*

1   *Bank, N.A.*, 276 F. 3d 502, 507 (9th Cir. 2002), *Knupfer v. Lindblade (In*

2   *re Dyer)*, 322 F. 3d 1178 (9th Cir. 2003), and *Zilog, Inc. v. Corning (In*

3   *re Zilog, Inc.)*, 450 F. 3d 996, 1007-8 (9th Cir. 2006) the court honed

4   the requirements for a finding of contempt.  *Bennett* and *Walls* held that

5   a person who knowingly violates the discharge injunction can be held in

6   contempt under § 105(a) of the Bankruptcy Code.  *Bennett* cited with

7   approval the standard adopted by the Eleventh Circuit for violation of

8   the discharge injunction in *Hardy v. United State (In re Hardy)*, 97 F. 3d

9   1384, 1390 (11th Cir. 1996):  "[T]he movant must prove that the creditor

10  (1) knew the discharge injunction was applicable and (2) intended the

11  actions which violated the injunction."  *Bennett*, 298 F. 3d at 1069.

12      Notwithstanding the *Bennett* definition, the level of proof remained

13  uncertain.  Consequently, in *Dyer*, the court compared the level of

14  knowledge necessary for an award of damages under § 362(h) (now (k)) with

15  that necessary for such award for contemptuous violation of the discharge

16  violation.  Recognizing the higher standard for contempt, the court

17  wrote: "we hesitate[d] to extend that principle to the contempt context.

18  Generally, a party cannot be held in contempt for violating an injunction

19  absent knowledge of that injunction."  *Dyer*, 322 F. 3d at 1191-92.

20      Despite this prior case law, the court in *Zilog* found itself

21  considering a case where the bankruptcy court, without the benefit of an

22  evidentiary hearing, had found defendants in contempt, stating in its

23  oral ruling such things as "contempt need not be willful to justify an

24  award of damages" and "[c]ontempt may be established even if the failure

25  to comply with the Court order was unintentional."  The bankruptcy court

26  was also under the misimpression that knowledge could be presumed.  *In re*

27

28                                      - 33 -

1    *Zilog, Inc.*, 450 F. 3d at 1007-1008.  As a consequence, the Ninth Circuit

2    made a definitive statement to clarify the finding necessary for contempt

3    for violation of the discharge injunction:  the movant must establish by

4    clear and convincing evidence that the contemnee was aware of the

5    discharge injunction and that it applied to its claims.  *Id.* at 1009-

6    1010.  The standard set is a subjective standard, which differs from the

7    objective standard necessary for a stay violation.

8         That leads this court to consider whether Beveridge knew the

9    discharge injunction applied to its actions to reimpose the Trust Deed,

10    foreclose, and pursue unlawful detainer.  The answer would be "no".

11    Beveridge did not have the proper level of subjective knowledge and

12    therefore could not be found in contempt.

13         The facts here are strikingly similar on material elements to those

14    in *Emmert v. Taggart (In re Taggart)*, 548 B.R. 275 (9th Cir. BAP 2016).[19]

15    In that case, debtor Taggart was a member of SPBC LLC, of which Mr.

16    Emmert and Mr. Jehnke were also members.  Before his bankruptcy, Taggart

17    had transferred his membership interest to another LLC and eventually to

18    his attorney, Mr. Berman, in violation of the operating agreement which

19    granted the members a right of first refusal before any membership

20    interest could be transferred.  SPBC sued Taggart and Mr. Berman in state

21    court to undo the transfer and for damages.  Taggart and Berman answered

22    and counterclaimed against Mr. Emmert, Mr. Jehnke, and SPBC for

23    attorneys' fees.  After the intervening bankruptcy, SPBC resumed the

24

25         [19] This court has significant knowledge of the *Taggart* case, as lead
26    author of the BAP opinion.

27

28                                      - 34 -

1    state court litigation but dropped the request for damages because of the

2    discharge.  The state court ruled in favor of SPBC and unwound the

3    transfers.

4        Subsequent to this victory, Mr. Emmert, Mr. Jehnke, and SPBC

5    (collectively SPBC) filed a petition in state court seeking attorneys'

6    fees for the period after Taggart's discharge, at the same time seeking a

7    ruling from the state court on whether the discharge injunction applied

8    to the post-discharge fee request, asserting that Taggart had "returned

9    to the fray" under the holding in *Boeing North American, Inc. v. Ybarra*

10   *(In re Ybarra)*, 424 F. 3d 1018 (9th Cir. 2005).  The state court

11   eventually ruled that the fees were not discharged and awarded fees to

12   SPBC.  Meanwhile, Taggart had reopened his bankruptcy case, seeking a

13   similar *Ybarra* decision from that court.  The bankruptcy judge agreed

14   with the state court that Taggart had "returned to the fray" and that the

15   discharge injunction did not apply to the fee award.  The state court

16   then entered judgment for the fees against Taggart.

17       Taggart appealed the bankruptcy court decision to the district

18   court, which reversed, finding he did not return to the fray, and

19   remanded to the bankruptcy court to determine whether SPBC had violated

20   the discharge injunction.  Now told that Taggart did not return to the

21   fray, the bankruptcy judge applied the objective test of the Eleventh

22   Circuit in *Hardy* with regard to whether SPBC knew the discharge was

23   applicable and awarded sanctions against SPBC.  This time SPBC appealed

24   to the Ninth Circuit BAP, which reversed, ruling that under the *Zilog*

25   subjective standard SPBC could not have known the discharge injunction

26   applied to them at the relevant times of the alleged violative acts.

27

28                                    - 35 -

After all, it took an appellate ruling from the district court before
there was a determination the discharge injunction did apply to the
postpetition fees and SPBC could not have known it applied to them before
that time, believing from the prior court rulings that the injunction was
inapplicable to them. *In re Taggart*, 548 B.R. at 291.

Here, Beveridge believed it was entitled under § 2930 and
California case law to revivify its Trust Deed notwithstanding the
intervening bankruptcy discharge of Debtor. Only this court's ruling –
and eventually an appellate affirmance of that ruling if this court is
upheld – will give Beveridge the subjective knowledge that the discharge
injunction applied to its acts. Like in *Taggart*, There is no clear and
convincing evidence that at the time it acted to enforce the Trust Deed,
Beveridge knew such acts violated the injunction. This court cannot find
Beveridge in contempt for those activities because the *Zilog* test has not
been met.

**C. Request to Enter Default on State Court Cross Complaint**

Beveridge's November 6, 2017 filing of a Request for Entry of
Default presents a different circumstance on the knowledge issue, as well
as raising a distinct legal issue regarding the scope of the in personam
discharge. Prior to November 2017 this court had issued a preliminary
injunction rooted in its finding that the reimposition of the Trust Deed
was a violation of the discharge injunction. Since the Cross Complaint
sought a declaration that the Trust Deed and subsequent foreclosure
proceeding were valid, the relief sought was 100% counter to this court's
ruling. On that issue, there is sufficient clear and convincing evidence
that Beveridge knew the discharge injunction applied to its acts when

1  taken and therefore was in contempt of that injunction when it sought a

2  contrary entry of default.

3      The lesson of *Taggart*, however, is that it's not over until it's

4  over.  Unless and until an appellate court makes a final ruling that this

5  court has it right, maybe Beveridge does lack the necessary subjective

6  belief that the injunction applies to it.  After all, if the Summary

7  Judgment is reversed, the Trust Deed is valid and a default judgment on

8  the Cross Complaint would not violate anything.  After the appeal is

9  completed – and only at that time – would it be appropriate for a court

10 to determine whether Debtor, by filing the State Court Action in an

11 attempt to stop the foreclosure, had "returned to the fray" under the

12 *Ybarra* standard.[20]

13     Based on this procedural posture, the court will stay any decision

14 on this second prong of the contempt action until a final appellate

15 ruling is made in this case.[21]

16

17                              **CONCLUSION**

18     For the foregoing reasons, the court grants Summary Judgment for

19 Debtor and denies the cross motion of Beveridge.  Along with this

20

21     [20] In pure, unadulterated dicta, this court doubts it would find
   such a return to the fray where Debtor's acts were an attempt to halt
22 postpetition activity by Beveridge that could result in her losing her
   house, a far cry from debtor Ybarra returning to state court post
23 discharge to litigate and lose a prepetition wrongful termination claim
   for damages.

24
       [21] At the hearing on the Summary Judgment, Beveridge stated it would
25 not pursue the default any further until the appeal is final.  The
   court's intended stay order pending appeal will also maintain the status
26 quo in that case.

27

28                              - 37 -

1   Memorandum, it will enter a Statement of Uncontroverted Facts and

2   Conclusions of Law to support the Summary Judgment, an Order Granting

3   Summary Judgment to Debtor and Denying Summary Judgment to Beveridge, and

4   the Summary Judgment.  After entry of these documents, as promised, the

5   court will schedule a telephonic conference to discuss the scope of the

6   stay pending appeal.

7                                 ###

Date: February 9, 2018

Meredith A. Jury
United States Bankruptcy Judge